Yu Yan Zheng v Fu Jian Hong Guan Am. Unity Assn., Inc. (2019 NY Slip Op 00351)





Yu Yan Zheng v Fu Jian Hong Guan Am. Unity Assn., Inc.


2019 NY Slip Op 00351


Decided on January 17, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 17, 2019

Renwick, J.P., Manzanet-Daniels, Gische, Mazzarelli, Kahn, JJ.


8121 152370/15

[*1]Yu Yan Zheng, Plaintiff,
v
Fu Jian Hong Guan American Unity Association, Inc., Defendant-Respondent, Diane Chong, Defendant-Appellant.


Gannon, Rosenfarb & Drossman, New York (Lisa L. Gokhulsingh of counsel), for appellant.
Litchfield Cavo LLP, New York (Lyndsey C. Bechtel of counsel), for respondent.



Order, Supreme Court, New York County (James E. d'Auguste, J.), entered November 22, 2017, which, in a personal injury action, granted landlord-defendant Diane Chong's motion, pursuant to CPLR 2221(a), for modification of an order, same court and Justice, entered September 15, 2017, inter alia, granting her summary judgment dismissing the complaint, by adding provisions addressing additional relief sought on summary judgment, and upon such consideration, denied summary judgment on her cross claims for defense, indemnification and past and future legal costs, fees, expenses and disbursements as against co-defendant Fu Jian Hong Guan American Unity Association, Inc. (the Association), unanimously reversed, on the law, without costs, and summary judgment granted to movant on such cross claims.
On February 9, 2015, plaintiff Yu Yan Zheng was descending an exterior stairway, which provides access to the basement of commercial premises at 17 Monroe Street in Manhattan, when she allegedly slipped and fell on a snowy or icy condition, fracturing her left ankle. It was snowing at the time of the accident. Defendant Diane Chong co-owns the building with her husband, nonparty Louis Chong, and, at the time of the accident, was leasing the basement to the Association.
By answer dated April 29, 2015, Chong asserted cross claims against the Association seeking indemnity and/or contribution in the event of any recovery by plaintiff, urging that the Association as tenant was responsible for maintaining the stairway. Chong also alleged that the Association breached its lease by failing to procure general liability insurance on her behalf. The Association opposed by moving to dismiss Chong's cross claims against it, claiming it had no duty to remedy the alleged condition, because there was a storm in progress when the accident happened.
The parties agree that the controversy is controlled by a lease agreement entered into by Louis Chong and the Association and a rider, which were apparently executed December 12, 2008 [FN1]. The lease agreement provided that the lease would be in effect from January 1, 2009 to [*2]December 31, 2013. Although the accident occurred in February 2015, the uncontroverted evidence supports the parties' position that the lease continued to govern their relationship at the time of the accident.
Paragraph 2 of the lease provides that the Association agreed to "forever indemnify and save" Chong harmless "against any and all liability, penalties, damages, expenses and judgments arising from injury during" the lease term, for any act or omission of the Association and its employees, guests, and agents, "and also for any matter or thing growing out of [its] occupation of the demised premises or the streets, sidewalk or vaults adjacent thereto."
Paragraph 1 of the rider requires the Association to maintain liability insurance naming Chong as an additional insured, providing coverage of $1,000,000.00 for bodily injury, and $100,000.00 for property damage. Paragraph 7 of the rider obligates the Association to "keep the sidewalk and basement stairs in front of the demised premises free of snow and ice and free of debris."
By order entered September 15, 2017, the court granted Chong's and the Association's respective motions for summary judgment and dismissed the complaint, finding that plaintiff had testified that it was snowing at the time of the accident, and thus there was a storm in progress [FN2]. The court did not address Chong's motion for summary judgment on her cross claims against the Association, however.
Chong then sought "reconsideration and modification" of the September 15, 2017 order to grant her motion for summary judgment as to her cross claims against the Association for indemnification, contribution and costs. On November 22, 2017, the court granted Chong's motion for reconsideration, but denied her request for summary judgment on her cross claims for [*3]indemnification, contribution and costs. Chong now appeals from that determination.
At the outset, it is evident that all documents in the lease package were executed together, on or about December 12, 2008, and that the intent of the parties was that the lease agreement be construed together with the accompanying rider and the other documents as being the terms of their lease transaction.[FN3]
There is no issue of fact as to whether the terms of the 2008 lease remain binding on the parties. Both parties are in agreement that the terms of the lease, including both the lease agreement and rider, remained binding on them as of the date of the accident, notwithstanding the fact that the accident occurred subsequently to the December 31, 2013 expiration date stated in the lease. Where, as here, "a tenant . . . remains in possession on the expiration of a [lease] granting exclusive possession, it is a holdover and, pursuant to common law, there is implied a continuance of the tenancy on the same terms and subject to the same covenants as those contained in the original instrument" (City of NY v Pennsylvania R. Co., 37 NY2d 298, 300).
Here, paragraph 7 of the rider to the subject lease unambiguously provides that the Association "shall keep the sidewalk and basement stairs in front of the demised premises free of snow and ice." The factual record reveals that there is only one exterior stairway on the premises, which is the stairway upon which the accident allegedly occurred. Further, the record reveals that Rui Hua Bian, the Association's janitor, testified that she recalled cleaning snow off the stairs at 11:00 a.m. on the day of the alleged accident. This testimony is consistent with Louis Chong's testimony that the Association and he, as landlord, had an agreement that the tenant Association would be responsible for removing snow and ice from the stairs leading to their space.
Moreover, under paragraph 2 of the subject lease, the Association agreed to "forever indemnify and save" Chong harmless "against any and all liability, penalties, damages, expenses and judgments arising from injury . . . occasioned in whole or in part by any act or acts, omission or omissions of the [Association]." Further, paragraph 1 of the rider requires the Association to maintain liability insurance naming Chong as an additional insured, providing coverage of $1,000,000 for bodily injury. Thus, read together, the provisions of the subject lease agreement and rider, and hence, the lease itself, unambiguously require the Association to keep the exterior stairway free of snow and ice and to indemnify defendant landlord Chong for any liability arising from bodily injury occasioned by the Association's failure to keep the exterior stairway free of snow and ice.
Supreme Court's reliance on paragraph 22 of the lease in reaching a different conclusion was in error, as that provision of the lease pertains to the "sidewalk and curb in front" of the
premises, and not the basement stairs, which are specifically addressed in paragraph 7 of the rider.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JANUARY 17, 2019
CLERK



Footnotes

Footnote 1: The date appearing in the introduction of the standard form lease agreement is December 11, 2009. That document lacks any date accompanying the signatures of the parties to it, however. The lease agreement is apparently one part of a package consisting of the lease agreement itself; a rider to the lease agreement, a schedule of monthly rental payments from January 1, 2009 to December 31, 2013 and an allonge to the tenant basement lease. Each of the pages of these documents is signed or initialed by the same three parties. The package also includes the signed personal guaranty of Yee Fu Chan, the signed personal guaranty of Jun Di Chan, and a document, primarily in Chinese, on which the name of the Association and the names Yee Fu Chan and Louis Chong appear, as well as the address of the subject premises. With the exception of the lease agreement and schedule (which is undated), all of the documents in the package are dated December 12, 2008. As all of the documents in the package (referenced together by the parties as the "lease"), when read together, relate to a rental term beginning January 1, 2009 and terminating December 31, 2013, it appears that the correct date of the lease agreement in December 11, 2008, and the lone 2009 date in the introductory language of the lease agreement is a typographical error. The notion that the lease agreement was signed in December 2009, one year after the rider and the other documents in the package were signed, makes no sense. Nor is it likely that the parties would enter into a lease agreement in December 2009 for a lease term that began in January 2009, nearly a year earlier.

Footnote 2: By order entered October 11, 2018 this Court unanimously affirmed the September 15, 2017 order on the grounds that it was undisputed that defendants' obligation to keep the stairs free of snow and ice was suspended by the storm in progress doctrine and that the Association demonstrated that it reasonably maintained the premises by placing non-skid strips on the stairs. (see Zheng v Fu Jian Hong Guan Am. Unity Assn., Inc., 165 AD3d 486 [1st Dept 2018]). It is Supreme Court's subsequent order, entered November 22, 2017, that is being challenged on this appeal, however.

Footnote 3: As this Court has recently stated, "we must examine the parties' obligations and intentions as manifested in the entire agreement and seek to afford the language an interpretation that is sensible, practical, fair, and reasonable" (MPEG LA, LLC v Samsung Electronics Co., Ltd., 166 AD3d 13 [1st Dept 2018] [citing Riverside S. Planning Corp. v CRP/Extell Riverside, L.P., 13 NY3d 398, 404 (2009)]; see 11 Richard A. Lord, Williston on Contracts § 32:11 at 765 [4th ed 2012] ["A contract must be construed as a whole and the intention of the parties collected from the entire instrument and not from detached portions. . . . The words of a contract should be given a reasonable meaning rather than an unreasonable one"]).